# 13-1665

## United States Court of Appeals
## For the Second Circuit

---------◆---------

MARIA LA RUSSO,
as attorney in fact for A. Matthew De Lucia,

*Plaintiff-Appellant,*

v.

ST. GEORGE'S UNIVERSITY SCHOOL OF MEDICINE,
JOHN DOES, 1-5, (as employees, agents, and/or servants of St. George's
and/or as independent contractors), Jane Does, 1-5, (as employees, agents,
and/or servants of St. George's and/or as independent contractors),

*Defendants-Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK (White Plains)

## BRIEF FOR PLAINTIFF-APPELLANT

---

BELDOCK LEVINE & HOFFMAN LLP
*Attorneys for Plaintiff-Appellant*
99 Park Avenue, Suite 1600
New York, New York 10016
(212) 490-0400

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................... iii

PRELIMINARY STATEMENT ............................................................1

STATEMENT OF THE CASE
AND JURISDICTIONAL STATEMENT.................................................2

ISSUES PRESENTED........................................................................3

BACKGROUND ...............................................................................4

    I.    Facts Underlying Plaintiff's Claims ......................................4

    II.    Procedural History.......................................................10

        A.    State court action.................................................10

        B.    Removal to federal court.......................................12

        C.    Motions in the district court...................................14

SUMMARY OF ARGUMENT ............................................................14

ARGUMENT ..................................................................................17

    I.    The District Court Lacked Subject Matter Jurisdiction ......................17

        A.    SGU Ltd. is not a party to this suit, and the
            School of Medicine is a legal entity with the
            capacity to be sued ..................................................18

        B.    As a non-party, non-defendant, SGU Ltd. had
            no authority to invoke removal jurisdiction
            under 28 U.S.C. § 1441............................................24

        C.    There is no diversity of citizenship between
            the Plaintiff and the sole Defendant...........................33

i

# TABLE OF CONTENTS (cont'd)

II.    Plaintiff's Claims Are Not Time Barred ...............................................35

    A.    The district court misapplied New York's
        tolling statute, C.P.L.R. § 208....................................................35

        i.    Section 208 tolls the commencement of
            the limitations period until the initial
            period of disability ends ...................................................36

        ii.    The facts alleged meet the standard for
            tolling under § 208...........................................................39

    B.    Plaintiff's breach-of-contract and negligence
        claims are distinct from and not duplicative
        of her medical malpractice claim................................................44

III.    The District Court Abused its Discretion in Stating
    It Would Dismiss for *Forum Non Conveniens*...................................49

IV.    The District Court Abused Its Discretion in Denying
    Plaintiff Leave to Amend Her Complaint ...........................................52

CONCLUSION .................................................................................53

CERTIFICATE OF COMPLIANCE ....................................................54

# TABLE OF AUTHORITIES

## CASES

*Am. Home Assurance Co. v. RJR Nabisco Holdings Corp.*,
   70 F. Supp. 2d 296 (S.D.N.Y. 1999) ............................................................27

*Anderson News, LLC v. Am. Media, Inc.*,
   680 F.3d 162 (2d Cir. 2012) ...........................................................................4

*Barnes v. Cnty. of Onondaga*,
   65 N.Y.2d 664 (1985)..............................................................................40, 41

*Bleiler v. Bodnar*,
   65 N.Y.2d 65 (1985)................................................................................47, 48

*Bounds v. Pine Belt Mental Health Care Res.*,
   593 F.3d 209 (2d Cir. 2010). .........................................................................17

*Caines v. Prudential Ins. Co.*,
   8 Misc. 2d 789 (N.Y. Sup. Ct. 1957)......................................................21, 22

*Cairl v. Cnty. of Westchester*,
   150 A.D.2d 749 (2d  Dep't 1989)..................................................................41

*Carden v. Arkoma Assocs.*,
   494 U.S. 185 (1990).......................................................................................34

*Caso v. St. Francis Hosp.*,
   34 A.D.3d 714 (2d Dep't 2006)....................................................................45

*Chavis v. Chappius*,
   618 F.3d 162 (2d Cir. 2010) .........................................................................52

*De Los Santos v. Fingerson*,
   No. 97 Civ. 3972 (MBM), 1998 U.S. Dist. LEXIS 16657,
   1998 WL 740851 (S.D.N.Y. Oct. 23, 1998)........................................... 37-38

*DePoel v. City of New York*,
   772 F. Supp. 106 (E.D.N.Y. 1991) ...............................................................41

## TABLE OF AUTHORITIES (cont'd)

**CASES**

*Dumas v. Agency for Child Dev.-N.Y. City Head Start*,
    569 F. Supp. 831 (S.D.N.Y. 1983) ...............................................44

*Eisenbach v. Metro. Transp. Auth.*,
    62 N.Y.2d 973 (1984)............................................................... 43-44

*Graboi v. Kibel*,
    432 F. Supp. 572 (S.D.N.Y. 1977) ........................................37, 38

*Griffin v. Oceanic Contractors, Inc.*,
    458 U.S. 564 (1982)....................................................................39

*Gross v. Deberardinis*,
    722 F. Supp. 2d 532 (D. Del. 2010) ...........................................26

*Hillberry v. Wal-Mart Stores East, L.P.*,
    No. 05CV-63-H, 2005 U.S. Dist. LEXIS 15942,
    2005 WL 1862087 (W.D. Ky. Aug. 3, 2005).......................... 31-32

*Holmes Group, Inc. v. Vornado Air Circulation Sys.*,
    535 U.S. 826 (2002)....................................................................25

*Hoops v. Bellevue Hosp. Ctr.*,
    28 Misc. 3d 61 (App. Term 1st Dep't 2010) .................... 39-40, 42

*Hous. Auth. v. Millwood*,
    472 F.2d 268 (5th Cir. 1973) ......................................................26

*In re Pasch* (*Chemoleum Corp.*),
    26 Misc. 2d 918 (N.Y. Sup. Ct. 1960).........................................22

*Iragorri v. United Techs. Corp.*,
    274 F.3d 65 (2d Cir. 2001) (en banc) .........................................51

*Jana Master Fund, Ltd. v. JP Morgan Chase & Co.*,
    490 F. Supp. 2d 325 (S.D.N.Y. 2007) .........................................27

iv

## TABLE OF AUTHORITIES (cont'd)

### CASES

*Jordan v. State*,
56 Misc. 2d 1032 (Ct. Cl. 1968) ...................................................................36

*JRA Holding v. McCleary*,
100 F.3d 944 (table case),
1996 U.S. App. LEXIS 2910 (2d Cir. 1996) ........................................... 28-29

*Juliano v. Citigroup, N.A.*,
626 F. Supp. 2d 317 (E.D.N.Y. 2009) .........................................................26

*Kosta v. St. George's University School of Medicine*,
641 F. Supp. 606 (E.D.N.Y. 1986) ......................................................... 19-20

*Lee v. Food Lion, LLC*,
No.4:12cv142, 2013 WL 588767,
2013 U.S. Dist. LEXIS 19508 (E.D. Wa. Feb. 13, 2013) ....................... 32-33

*Lupo v. Human Affairs Int'l, Inc.*,
28 F.3d 269 (2d Cir. 1994) ...................................................................25, 30

*McCarthy v. Volkswagen of Am.*,
55 N.Y.2d 543 (1982) ..........................................................................39, 40

*Mignogna v. Sair Aviation, Inc.*,
937 F.2d 37 (2d Cir. 1991) .............................................................17, 29, 34

*Monroe v. Long Island Coll. Hosp.*,
84 A.D.2d 576 (2d Dep't 1981).................................................................45

*Montefiore Med. Ctr. v. Teamsters Local 272*,
642 F.3d 321 (2d Cir. 2011) ................................................................17, 18

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,
526 U.S. 344 (1999)...................................................................................18

*Newman & Cahn, LLP v. Sharp*,
388 F. Supp. 2d 115 (E.D.N.Y. 2005) ........................................................27

# TABLE OF AUTHORITIES (cont'd)

## CASES

*Norex Petroleum Ltd. v. Access Indus.*,
  416 F.3d 146 (2d Cir. 2005) ....................................................... 49-50, 51, 52

*Papelino v. Albany Coll. of Pharmacy*,
  633 F.3d 81 (2d Cir. 2011) .......................................................... 35

*Parvi v. City of Kingston*,
  41 N.Y.2d 553 (1977) .................................................................. 48

*Pioneer Exploration, Ltd. v. Kansas Gas Serv. Co.*,
  No. 04-1335-WEB, 2004 WL 2931403,
  2004 U.S. Dist. LEXIS 25458 (D. Kan. Dec. 17, 2004) .............................. 32

*Santana v. Union Hosp.*,
  300 A.D.2d 56 (1st Dep't 2002) ............................................................ 41-42

*Shamrock Oil & Gas Corp. v. Sheets*,
  313 U.S. 100 (1941) ..................................................................... 24-25

*Sheppard v. Sheppard* (*In re Notice of Removal Filed by Einhorn*),
  481 F. Supp. 2d 345 (D.N.J. 2007) ......................................................... 26-27

*Singer v. State Farm Mut. Auto. Ins. Co.*,
  116 F.3d 373 (9th Cir. 1997) ....................................................... 13

*Sperry Prods. v. Ass'n of Am. R.Rs.*,
  132 F.2d 408 (2d Cir. 1942) ................................................... 21, 34

*Stackrow v. N.Y. Prop. Ins. Underwriter's Ass'n*,
  115 A.D.2d 883 (3d Dep't 1985) ............................................................ 42

*Syngenta Crop Prot., Inc. v. Henson*,
  537 U.S. 28 (2002) ..................................................................... 25

*Ware v. Wyndham*,
  No.09-6420, 2010 WL 2545168,
  2010 U.S. Dist. LEXIS 60734 (D.N.J. June 18, 2010)............................ 30-31

# TABLE OF AUTHORITIES (cont'd)

## CASES

*Weiner v. Lenox Hill Hosp.*,
    88 N.Y.2d 784 (1996)............................................................................47, 48

*Wheeler v. State*,
    104 A.D.2d 496 (2d Dep't 1984)................................................................42

*Whitney Lane Holdings, LLC v. Don Realty, LLC*,
    No. 08-cv-775, 2010 WL 1257879,
    2010 U.S. Dist. LEXIS 29778 (N.D.N.Y Mar. 26, 2010)............................26

*Yannon v. RCA Corp.*,
    131 A.D.2d 843 (2d Dep't 1987)................................................................41

*Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001) .............................53

## FEDERAL STATUTES AND RULES

28 U.S.C. § 1291 .............................................................................................2

28 U.S.C. § 1441 ....................................................................................*passim*

28 U.S.C. § 1446 ...........................................................................................25

28 U.S.C. § 1447 ...........................................................................................28

Fed. R. Civ. P. 17 ..........................................................................................20

## STATE STATUTES AND RULES

C.P.L.R. § 208...........................................................................................15, 35

C.P.L.R. § 213...............................................................................................45

C.P.L.R. § 214...............................................................................................45

# TABLE OF AUTHORITIES (cont'd)

## STATE STATUTES AND RULES

C.P.L.R. § 214-a..................................................................................39

C.P.L.R. § 1003..................................................................................22

C.P.L.R. § 1013..................................................................................22

C.P.L.R. § 3012..................................................................................12

N.Y. Gen. Ass'ns Law § 13 ................................................................21

## TREATISES

16 James Wm. Moore & Georgene M. Vairo,
    *Moore's Federal Practice – Civil* § 107.11 (3d ed.) ....................28

14C Charles A. Wright, Arthur R. Miller,
    Edward H. Cooper, & Joan E. Steinman,
    *Federal Practice and Procedure* § 3721, 3730 (4th ed.) .............28

David D. Siegel, *New York Practice* (4th ed. 2005)................................36

1 Weinstein, Korn & Miller, *New York Civil Practice: CPLR*
    (2d ed. 2006).........................................................................37, 48

14 Lee S. Kreindler et al., *New York Law of Torts* (1997) ......................48

## PRELIMINARY STATEMENT

This is a New York common law suit filed by a New York citizen in New York State court against an entity admitted to be an unincorporated association that does business in New York and has members who are New York citizens.  There is no federal interest in this case and it does not belong in federal court.  A non-party, which was not served and did not appear in state court, improperly removed this case, even though it lacked standing to invoke federal removal jurisdiction.  Brushing aside its lack of removal jurisdiction—and overlooking the absence of diversity of citizenship between the actual parties in the suit—the district court dismissed the case based on several misapplications of New York law.

Plaintiff-Appellant Dr. Maria La Russo ("Plaintiff" or "Dr. La Russo") sued St. George's University School of Medicine ("Defendant," "the School of Medicine," or "the School"), for injuries her son Matthew sustained while attending the School at its Grenada campus.  The School recruits heavily and maintains principal offices in New York; and during an information session held there and in materials sent to Matthew, the School promised to provide appropriate on- and off-campus medical and mental health services at its Grenada campus.  Yet, when Matthew sought help from his faculty advisor for mental health issues, and later entered a state of psychological crisis, the School did not refer him to those services.  Instead, School security personnel seized Matthew in the middle of

the night and escorted him off-campus to Mount Gay Hospital, a psychiatric facility in Grenada known to have deplorable and unsafe conditions. Mount Gay was *not* one of the two specific Grenadian health facilities to which the School had represented to Matthew that it would refer medical emergencies. When Matthew's parents discovered he had been involuntarily admitted to Mount Gay, his father went to Grenada and found him at Mount Gay, lying nearly naked in filthy conditions on a concrete floor in an outdoor cell, incoherent and incapacitated. As a result of his being sent to that facility, Matthew sustained serious physical and psychological injuries, as well as substantial economic damages. Dr. La Russo, as Matthew's attorney-in-fact, sued the School for its breach of contract, medical malpractice, and non-medical negligence, which caused those injuries.

## STATEMENT OF THE CASE
## AND JURISDICTIONAL STATEMENT

Plaintiff appeals the March 28, 2013 Judgment of the Southern District of New York and Judge Edgardo Ramos' Opinion and Order entered the same day (A.287-311).[1] Plaintiff filed a timely Notice of Appeal on April 25, 2013 (A.312). This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

Discussed more fully in Point I, the district court lacked subject matter jurisdiction. Dr. La Russo, a New York citizen, filed this suit in New York State

---

[1] "A." refers to pages in the Joint Appendix.

court, against a single defendant, the School of Medicine. Dr. La Russo brought only state-law claims. Non-party St. George's University Ltd. ("SGU Ltd.")—which was not a named defendant, had not been served, and had never answered, intervened, or appeared in the state proceedings—removed this case to federal court under 28 U.S.C. § 1441. However, that statute allows removal only "by the defendant or the defendants." In its Notice of Removal, SGU Ltd. erroneously claimed that it was the defendant because it was "the entity that owns and operates the non-juridical named defendant," and invoked diversity jurisdiction, because SGU Ltd. is a foreign corporation. However, SGU Ltd. admitted that the School is "an unincorporated association"—and under New York and federal law, unincorporated associations are legal entities with the capacity to be sued. Unincorporated associations are also citizens of the states where their members are citizens, and the record reveals that members of the St. George's University School of Medicine are citizens of New York. Accordingly, SGU Ltd. had no authority to invoke the district court's removal jurisdiction, and there is no diversity of citizenship because the only parties to this suit are both New York citizens.

## ISSUES PRESENTED

1.   Whether the district court lacked jurisdiction where a non-party, without standing to remove under 28 U.S.C. § 1441, removed the case from state court and there was no diversity of citizenship between the actual parties in the suit.

3

2.    Whether the district court erred in dismissing the complaint based on the state statute of limitations for medical malpractice claims where proper application of the state tolling provision made that claim timely, and the complaint also pled breach of contract and non-medical negligence claims and the suit was filed within the longer statutes of limitations for those claims.

3.    Whether the district court abused its discretion by stating in dicta that it would dismiss for *forum non conveniens* even though Defendant did not establish that it was amenable to service in Grenada, and the court applied too little, if any, deference to Plaintiff's choice of her home forum, which is entitled to the "greatest deference," and overlooked witnesses and evidence located in the United States.

4.    Whether the district court erred in denying Plaintiff's motion to amend as moot where its decision to dismiss was based on legal errors.

## BACKGROUND

### I.    Facts Underlying Plaintiff's Claims[2]

Before Dr. La Russo's son Matthew enrolled at the School of Medicine, the School presented Dr. La Russo and Matthew with information about the services it provides to its students at its Grenada campus.    Dr. La Russo and Matthew attended an "Information Session" hosted by the School at the Roosevelt Hotel in

---

[2] "[A]ll material factual allegations of the . . . complaint" are taken as true on this appeal of a grant of a motion to dismiss. *Anderson News, LLC v. Am. Media, Inc.*, 680 F.3d 162, 168 (2d Cir. 2012) (internal quotation marks omitted).

4

Manhattan (A.59). At that session, a representative from the School's admissions staff assured attendees, including Matthew and Dr. La Russo, that medical facilities and treatment, as well as medical evacuation if needed, would be available on-campus (A.59).

The School also provided Matthew and Dr. La Russo with a publication entitled "St. George's University School of Medicine; Think Beyond; 2005-2006" (A.59). That publication included a section entitled "University Health Services" (A.59; *see also* A.141-50), which stated:

> University Health Services (UHS) maintains modern clinic facilities with scheduled and walk-in hours from 9:00 AM to 4:30 PM, Monday through Friday. Additionally, there is daily 24-hour coverage by well-credentialed physicians and physician assistants to provide students with emergency care when the clinic is closed. Medical emergencies in Grenada are referred to Grenada General Hospital or St. Augustine Clinic. . . . University Health Services facilitates with air evacuation, if indicated, on both campuses. (A.59-60; *see also* A.149).

In January 2007, Matthew received a letter from the School of Medicine offering him admission for the 2007/2008 school year (A.60). Enclosed with the letter of admission was a handbook from the Office of the Dean of Students entitled "Student Support Services" (A.60; *see also* A.151-54). The first page of the handbook stated: "The Office of the Dean of Students advocates on behalf of students to help you make the best use of the services available both on and off campus. Any student with mental or physical disabilities is provided a wide range

5

of support services." (A.60; *see also* A.152). The handbook also included a section entitled "University Health Services," which read:

> St. George's University Health Services (UHS) provides the University community with an outpatient clinic and easy-access healthcare. . . . In addition to the regular clinic hours . . . UHS provides emergency medical services 24 hours a day, 7 days a week. An excellent, dedicated team of physicians, clinical tutors and physician extenders with varied backgrounds maintains this service. Medical emergencies in Grenada are referred to Grenada General Hospital or St. Augustine Clinic. . . . UHS facilitates air evacuation if necessary on both campuses. (A.60; *see also* A.153).

Matthew began attending the School of Medicine in August 2007 (A.53). In the spring of 2009, Matthew visited his faculty advisor, Dr. Jacqueline Stanley (who is not a medical doctor), to discuss concerns about stress and academic issues (A.54). Although Matthew appeared disheveled, anxious, and stressed, Dr. Stanley did not advise him to visit the counseling department or the school clinic or to see any medical or mental health professional (A.54). Instead, she improperly recommended that he go to the beach and take a vacation (A.54). Matthew took Dr. Stanley's advice and went on a sailing trip in May 2009 (A.54).

Upon his return to the School, Matthew was seriously ill and in a state of psychological crisis: He was disoriented, sickly, and aimlessly wandering on and off St. George's campus (A.54). Fellow students alerted school officials to Matthew's condition (A.54). In spite of the School's representation that it maintained "24-hour coverage by well-credentialed physicians and physician

assistants to provide students with emergency care," school security officers picked up Matthew in the middle of the night and escorted him off campus to Mount Gay Hospital (A.54-55).  Mount Gay was *not* one of two facilities to which the School said it would refer medical emergencies, and was well-known to be a dangerous, inadequately staffed environment that did not provide appropriate care, and had failed to address a known issue of sexual abuse among patients (A.55, 57-59).[3] Matthew was unable to consent to any form of treatment due to his condition, and was involuntarily admitted to Mount Gay (A.55).

Despite having on file the contact information for Matthew's parents, the School did not inform them about his condition or seek their consent for his admission to Mount Gay; nor did the School inform them that Matthew had been admitted to Mount Gay (A.55).  Matthew's parents learned of his situation when one of Matthew's fellow students at the School of Medicine contacted them (A.55).  The student told Matthew's parents about the deplorable conditions at

---

[3] In 2005, the European Union and Grenadian government issued a report identifying Mount Gay's failure to properly train its staff or hire skilled nurses, and noting that "Mount Gay is always in crisis" (A.57-58).  A local Grenada newspaper, *The Grenada Informer*, published an article in 2007 about Mount Gay's "many problems," including the failure of staff and administrators to address a known escalation in patient-on-patient sexual abuse, and the fact that the facility was seriously overcrowded (A.58).  In 2009, the World Health Organization published a report in collaboration with the Grenadian Ministry of Health that Mount Gay lacked adequate facilities and failed to properly diagnose patients (A.58-59).  Faculty, administrators, staff, and students of the School of Medicine were aware of Mount Gay's reputation and conditions (A.55, 57).

Mount Gay (A.55). Matthew's parents immediately called the School, leaving urgent messages, but did not receive an informative response (A.55).

Matthew's father, Dr. Robert De Lucia, traveled to Grenada and visited Mount Gay on or about May 14, 2009, where he found Matthew in a terrible state (A.55). Specifically, as alleged in the complaint, Dr. De Lucia found Matthew "in an outdoor cell lying on a concrete floor without a mattress, naked except for boxer shorts that were hanging down"; "incoherent due to overdosing of Haldol and other drugs"; "experiencing muscle weakness, muscle tremors, dilated eyes, drowsiness, and dry mouth and lips due to his overmedication and a lack of adequate hydration"; his "body was covered with insect bites and a noxious odor of urine and feces permeated his person" (A.55-56). Dr. De Lucia did not observe any identifiable medical professionals on duty at the hospital (A.56).

After learning about her son's condition from her husband, Dr. La Russo immediately travelled to Grenada (A.56). Drs. La Russo and De Lucia together returned to Mount Gay to try to have Matthew released (A.56). During that visit, they observed patients wandering around without supervision, and saw that the hospital failed to reasonably protect its patients from physical harm by other patients (A.56). Drs. La Russo and De Lucia observed Matthew become agitated and appeared frightened when he was touched by an aggressive patient (A.56).

8

On May 16, 2009, Matthew's parents secured his release from Mount Gay, and brought him back to the U.S. the following day (A.56).  Matthew had no prior history of psychiatric problems, but since returning from Grenada, he has experienced a high degree of psychic pain and suffering, and has required continuous psychiatric care (A.62).  Matthew has also required medical treatment, including two rectal surgeries to ameliorate a condition that did not exist prior to his admission to Mount Gay, and treatment for skin rashes, abrasions, and allergies resulting from exposure to unhygienic conditions (A.61-62).  Matthew's psychiatric and physical injuries are or may be permanent (A.62).

After a period of treatment, Matthew wanted to complete medical school, and so in the fall of 2009, he returned to the School of Medicine (A.56).  He became ill again in January 2010 and went to the School's counseling office.  *Id.*  School staff sent Matthew to St. Augustine's Hospital where he was admitted (A.56-57).  Matthew's parents flew to Grenada and brought him back to the U.S., and after further treatment, Matthew again returned to the School of Medicine in the fall of 2010 (A.57).  However, his mental condition deteriorated before classes began and he had to return to the U.S. without obtaining his degree (A.57).

The School's breach of its promise to provide on-campus health services and refer medical emergencies to specific health facilities, its non-medical negligence in delivering Matthew to a psychiatric facility widely-known to have unsafe

9

conditions, and its medical malpractice in failing to properly diagnose and treat

Matthew when appropriate, caused Matthew injuries and damages (A.61-62).  He

has suffered significant physical and psychological pain and suffering, as well as

related medical expenses (A.61-62).  He also incurred substantial student loan debt

for the medical degree he expected to obtain; but as a result of the School of

Medicine's conduct, Matthew has been unable to complete his degree, and is now

unable to repay that debt and the interest accruing on it (A.61).

## II.    Procedural History

### A.    State court action

On November 15, 2011, Dr. La Russo, as attorney in fact for Matthew, filed

a Summons with Notice in New York Supreme Court, Westchester County naming

"St. George's University School of Medicine" as the sole defendant (A.76-77).[4]

Dr. La Russo amended her Summons the same day to add five "Doe" defendants

(A.13-14).   In February 2012, Dr. La Russo served process for the School of

Medicine upon the New York Secretary of State and mailed a copy of the

Summons with Notice by certified mail to a Grenada address listed on the School's

website (A.71, 86-87).  That same day, Dr. La Russo served by the same method

---

[4] This was the proper forum because Dr. La Russo and Matthew are citizens
of New York, the School of Medicine conducts business in New York, the contract
between Matthew and the School of Medicine was formed in New York, and many
of Matthew's expected witnesses reside in New York and nearby States.

two entities that her counsel had discovered were affiliated with the School of Medicine: St. George's University, LLC ("SGU LLC"), and University Support Services, LLC ("USS LLC") (A.72, 88-91).

Through her attempts at serving the School of Medicine, Dr. La Russo discovered that the School and its related entities maintained an opaque, overlapping, and intertwined relationship of various corporate identities (A.21-23). Dr. La Russo sought to ensure all necessary parties were properly joined and served (and head off a possible motion to dismiss).[5]  Accordingly, she filed an Order to Show Cause on March 7, 2012, seeking permission to file a supplemental summons adding Dr. Stanley, and SGU LLC, USS LLC, and a third affiliated entity, St. George's University Ltd. ("SGU Ltd.")—entities whose names were unknown at the time the original summons and amended summons were filed (A.15-27).[6]  The Order to Show Cause was issued March 12, 2012, and made returnable April 20, 2012 (A.15-16).

---

[5] The record includes reference to another case in which entities affiliated with St. George's University had used their opaque corporate structure to avoid liability and jurisdiction (A.94-97).

[6] Noting that all of the affiliated entities had received notice of her claims within the applicable statute of limitations, Dr. La Russo also sought a ruling pursuant to C.P.L.R. § 203 that the claims in her supplemental summons be considered interposed at the time her original summons was filed (A.25-27).

11

On March 26, 2012, Proskauer Rose LLP, representing "Defendant, sued herein as St. George's University School of Medicine," filed a Demand for Complaint pursuant to C.P.L.R. § 3012(b) (A.139-40). The Demand called for Dr. La Russo to serve her complaint "upon Defendant's attorneys, Proskauer Rose LLP" (A.139). Nowhere did the Demand mention SGU Ltd. nor any other entity affiliated with the School of Medicine nor that Proskauer Rose LLP represented SGU Ltd (A.139-40). On April 5, 2012, Dr. La Russo filed her Verified Complaint, again naming as the sole institutional defendant "St. George's University School of Medicine" (A.47-66).[7]

## B.    Removal to federal court

On April 19, 2012—one day before Plaintiff's Order to Show Cause was returnable—Proskauer Rose LLP filed a Notice of Removal in the Southern District of New York, White Plains Division (A.1, 7-12). The Notice's caption listed the same institutional defendant in Dr. La Russo's Verified Complaint: "ST. GEORGE'S UNIVERSITY SCHOOL OF MEDICINE" (A.7). Yet the Notice included a curious first line:

> PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, on this date, Defendant St. George's University, Ltd.

---

[7] The Verified Complaint was filed before the return date on Plaintiff's Order to Show Cause to file a supplemental summons to add SGU Ltd., SGU LLC, USS LCC, and Dr. Stanley. Thus, those entities are described in the Complaint (*see* A.49-52), but are not parties, nor named in the caption (A.47).

12

('SGU Ltd.'), the entity that owns and operates the non-juridical named defendant in the caption, 'St. George's University School of Medicine,' by its undersigned counsel, hereby removes the above-captioned action . . . .

(A.7).[8]  The Notice stated that the district court had original diversity jurisdiction because SGU Ltd. was a foreign corporation (A.9).

In contrast to its assertion that SGU Ltd. was the defendant, the Notice stated that "no defendants other than the single named non-juridical defendant are in the case or have been served with a summons naming them as parties" (A.8). Purporting to explain why SGU Ltd. suddenly appeared in this case, the Notice stated: "The sole named defendant in the Complaint (other than the fictitious 'Doe' defendants) is St. George's University School of Medicine. That entity, however, is an unincorporated association owned and operated by SGU Ltd. with no independent legal existence and no capacity to be sued." (A.9).[9]  SGU Ltd. did not

---

[8]  Proskauer Rose LLP also filed a Rule 7.1 Disclosure Statement for "Defendant St. George's University Ltd., which owns and operates the named 'defendant' St. George's University School of Medicine," stating that SGU Ltd. is wholly owned by SGU LLC (A.68).  No Rule 7.1 Disclosure Statement was filed for the only named defendant, St. George's University School of Medicine.

[9]  The statement that the School of Medicine "is an unincorporated association" is a "formal judicial admission," which is evidence of the fact for the purposes of determining jurisdiction.  *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376-77 (9th Cir. 1997).  This fact establishes the absence of federal jurisdiction in this case.  *See infra* Point I.  However, this admission does not foreclose Plaintiff from establishing with evidence later revealed that the School of Medicine actually embodies a different corporate form.

13

mention that an unincorporated association is a legal entity with the capacity to be sued under federal and New York law, *see infra* Point I.A, nor did it provide the legal basis or authority to *sua sponte* substitute itself for the sole named defendant.

### C.     Motions in the district court

SGU Ltd. moved to dismiss, arguing that the School of Medicine lacked legal capacity to be sued (and that SGU Ltd., as the owner and operator of the School, had never been named or served with process); that the case was not filed within the statute of limitations; and that the case should be dismissed for *forum non conveniens* (A.3, 120-21, 292-93). Dr. La Russo moved at the same time to join as defendants SGU Ltd., SGU LLC, USS LLC, and Dr. Stanley—the same amendment she sought in state court on her Order to Show Cause—and to remand because SGU LLC and USS LLC are New York citizens (A.3, 69, 291-92). Dr. La Russo also argued that SGU Ltd. lacked standing to remove in the first instance because it was not a defendant and had not been served with process in the state court action (A.293). The district court granted SGU Ltd.'s motion to dismiss and denied Dr. La Russo's motion as moot (A.310). Dr. La Russo timely appealed (A.312).

### SUMMARY OF ARGUMENT

1.     The district court lacked jurisdiction over this state-law case filed in state court. Removal jurisdiction provided in 28 U.S.C. § 1441 allows a case to be

14

removed "*by the defendant or the defendants*."  Yet the notice of removal was filed by SGU Ltd., a non-party that had not appeared, answered, or intervened, and had not been served with process in the state court proceedings.  The district court mistakenly accepted SGU Ltd.'s incorrect and conclusory assertion that the School of Medicine was a "non-juridical entity," and that SGU Ltd. was the defendant because it owned and operated the School.  The court overlooked SGU Ltd.'s admission that the School of Medicine is "an unincorporated association," which is a legal entity with the capacity to be sued under New York and federal law.  The court cited no authority for the proposition that a corporate parent can *sua sponte* substitute itself as the defendant in a suit in order to create party diversity and invoke federal removal jurisdiction.  The district court's opinion is contrary to the substantial and unanimous body of case law, and to the long-established rule that the statutory grant of federal removal jurisdiction be strictly construed.

2.    The district court erred in concluding that Plaintiff's complaint was filed one day after the expiration of the statute of limitations for medical malpractice claims.  The court misunderstood the application of C.P.L.R. § 208, the state tolling provision for incapacity.  It erroneously held that in order for the tolling statute to apply, Matthew had to be continuously incapacitated for the entire 2½-year limitations period for medical malpractice claims.  No court has reached this illogical conclusion, which renders nearly meaningless the tolling provision of

15

§ 208.  Instead, leading state law treatises and courts have properly understood and defined that statute as tolling the running of the statute of limitations until the initial period of disability ends.  Matthew was totally incapacitated at the very least for several days on and after May 14, 2009, and thus, even the medical malpractice claims were timely filed.

In addition, the court misapplied New York law by holding that Plaintiff's breach of contract and negligence claims—which have longer statutes of limitations than malpractice—were subsumed in her malpractice claim.  To the contrary, Plaintiff's complaint sounds primarily in breach of contract and negligence.  Plaintiff alleges that the School of Medicine broke its express, written promise to Matthew to provide him with certain on-campus health services and, when necessary, to utilize two particular off-campus medical facilities.  She also alleges that the School's security personnel removed Matthew from campus and delivered him to a facility widely known to have deplorable conditions.  The gravamen of these allegations is not negligent medical treatment, but the breach of an express agreement and the duty to use due care when voluntarily assumed.  Plaintiff's claims in this respect are not related to medical treatment or the duty that arises from a doctor-patient relationship; indeed, the School is not alleged to be a medical provider.

16

3.     The district court abused its discretion by stating that it would dismiss for *forum non conveniens*.  The court overlooked that Defendant had not met its burden to establish that it was amenable to service in Grenada and ignored that six of Plaintiff's fact witnesses and two experts reside in the United States and that Defendant does substantial business in New York.  The court also mistakenly concluded that it was "irrelevant" that the contract was formed in New York.

4.     The district court abused its discretion in denying Plaintiff's motion to amend based on its mistaken conclusion that Plaintiff's claims were time-barred.

## ARGUMENT

### I.     The District Court Lacked Subject Matter Jurisdiction

The district court erred in holding that SGU Ltd.'s removal was proper because "although SGU Ltd. has not formally appeared as a defendant in the action, it removed the case as the owner and operator of [the School of Medicine], which it claims is a 'non-juridical' entity" (A.293-94).  This Court reviews *de novo* the district court's "conclusions regarding its subject matter jurisdiction," *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 327 (2d Cir. 2011), including its removal jurisdiction, *Bounds v. Pine Belt Mental Health Care Res.*, 593 F.3d 209, 214-15 (2d Cir. 2010).  *See also Mignogna v. Sair Aviation, Inc.*, 937 F.2d 37, 40 (2d Cir. 1991) (the court must "raise[] the issue of removal jurisdiction . . . *sua sponte*").

17

**A.     SGU Ltd. is not a party to this suit, and the School of Medicine is a legal entity with the capacity to be sued.**

A challenge to the propriety of removal usually begins with the rule that the "party seeking removal bears the burden of showing that federal jurisdiction is proper." *Montefiore Med. Ctr.*, 642 F.3d at 327.  This brings to the fore a fundamental problem with SGU Ltd.'s removal: it is not a party to this suit. Indeed, SGU Ltd. has consistently stated that "proper service was [not] effectuated upon it" (A.8), and yet, is clear that "one becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999).  Thus, by its own admission, SGU Ltd. is not a party to this suit.  In order to avoid this fatal flaw, SGU Ltd. has carefully sowed confusion in this case by repeatedly and erroneously asserting that *it* is the defendant (*see, e.g.*, A.7).  We must begin then by weeding out this misconception.

SGU Ltd. has conceded from the very beginning that "[t]he sole named defendant in the Complaint (other than the fictitious 'Doe' defendants) is St. George's University School of Medicine" (A.9; *see also* A.7).  But it also misidentified itself in the Notice of Removal as the defendant invoking removal jurisdiction (A.7 ("Defendant St. George's University, Ltd. ('SGU Ltd.'), the entity that owns and operates the non-juridical named defendant in the caption, 'St.

18

George's University School of Medicine,' . . . hereby removes the above-captioned action . . . .")).[10]  The district court mistakenly adopted SGU Ltd.'s conclusory assertion that the School of Medicine is a "non-juridical" entity, and that SGU Ltd. had the authority to *sua sponte* substitute itself as the defendant and remove the case (A.293-95).  However, neither SGU Ltd. nor the district court provides any authority for this unusual proposition, which it is not supported by fact or law.

The disingenuous claim that the School of Medicine is "non-juridical" is contrary to Judge Wexler's decision in *Kosta v. St. George's University School of Medicine*, 641 F. Supp. 606 (E.D.N.Y. 1986), cited below by Dr. La Russo (*see* A.203), but apparently overlooked by the district court.  Judge Wexler described in considerable detail operations of the School of Medicine, its "North American correspondent," the Foreign Medical School Services Corporation (a predecessor of University Support Services LLC), and its major players (Charles R. Modica and Patrick Adams), 641 F. Supp. at 608-09, which remain substantially

---

[10] SGU Ltd. continues to perpetuate this mistaken assertion by claiming to be the Appellee on this appeal—even though it is *not* a party to this suit.  The Acknowledgement and Notice of Appearance, and Notice of Appearance as Substitute Counsel, filed with this Court on May 15 and 16, 2013 (docket entries 27 and 28, respectively), state: "[a]ppearance for . . . St. George's University Ltd. (sued herein as St. George's University School of Medicine)/Appellee."  The only Defendant-Appellee on this Court's docket (other than the John and Jane Does) is "St. George's University School of Medicine."  As explained above, and admitted by SGU Ltd., the School of Medicine is a separate legal entity from SGU Ltd. Thus, it is improper for SGU Ltd. to mislead the Court in this manner.

unchanged (*see* A.49-52, 130-31) except for the names of related entities and the apparent reformulation of the School as an "unincorporated association." Based on the activities described, Judge Wexler found the School of Medicine was doing business in New York and subject to jurisdiction there. 641 F. Supp. at 609. The School of Medicine is still very much a legal entity doing business in New York.

The district court did not explain what it understood a "non-juridical" entity to be, but SGU Ltd.'s Notice of Removal explained: "[The School of Medicine] is an unincorporated association owned and operated by SGU Ltd. with no independent legal existence and no capacity to be sued" (A.9). Capacity to be sued is a familiar concept, and it does not turn on whether an entity is owned by another. Federal Rule of Civil Procedure 17(b) sets forth who and what have "[c]apacity to [s]ue or [b]e [s]ued" in federal court. Rule 17(b) states that in a diversity case, an unincorporated association's capacity to be sued "is determined . . . by the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3)(A). SGU Ltd.'s admission that the School of Medicine is an unincorporated association proves that it has capacity to be sued.

Writing for this Court years ago, Judge Hand explained the modern common law rule that an unincorporated association has capacity to be sued: "*United Mine Workers v. Coronado Coal Co.*, 259 U.S. 344 [(1922)], . . . laid it down that [unincorporated] associations could be sued as such, and that execution upon the

20

judgment would go against their collective funds. Rule 17(b) now covers the same ground." *Sperry Prods. v. Ass'n of Am. R.Rs.*, 132 F.2d 408, 410 (2d Cir. 1942).

Likewise, an unincorporated association has capacity to be sued under New York law. N.Y. Gen. Ass'ns Law § 13. The district court misunderstood the import of this provision of state law. That statute provides that a suit against an unincorporated association "may be maintained[] against the president or treasurer of such an association." *Id.* The district court concluded that since Dr. La Russo named the School of Medicine, instead of its president or treasurer, it was proper for SGU Ltd. to *sua sponte* substitute itself as the defendant (A.295 n.3).[11] The court provided no authority however, for such an unusual procedure. One appropriate response to Dr. La Russo's state court suit would have been for the School of Medicine to move to dismiss on the grounds that the association was improperly named, which is the procedure spelled out in *Caines v. Prudential Ins. Co.*, 8 Misc. 2d 789 (N.Y. Sup. Ct. 1957), cited by SGU Ltd. in the district court. *See* SGU Ltd. Reply Memo. in Further Supp. of Mot. to Dismiss (Dist. Ct. Dkt.

[11] Dr. La Russo did not know that the School was an unincorporated association until SGU Ltd. filed its Notice of Removal. The structure of the St. George's University family of entities is hardly transparent or readily discoverable, which, as this case proves, facilitates their avoiding jurisdiction even in states where one or more of the entities maintain a principal place of business. See also *supra* n.5, noting record evidence of the University's use of its opaque corporate structure to avoid suit in other circumstances.

#18) at 3 n.5.[12]  In response, Dr. La Russo would have moved to amend to name
the School's president or treasurer, and this case would have proceeded in state
court, as those individuals are New York citizens and process was served at their
office.[13]  The point is, and what the district court misapprehended, under New
York law the School of Medicine has the capacity to be sued whether or not the
correct party was named.

SGU Ltd.'s argument also suffers two striking inconsistencies.  First, SGU
Ltd. contends that it is the actual defendant by virtue of its ownership of the School
of Medicine (A.7).  Yet, it is undisputed that SGU LLC wholly owns SGU Ltd.
(A.131), and that SGU LLC is a citizen of New York and would "destroy diversity
jurisdiction" if named as a defendant, SGU Ltd.'s Memo. in Opp. to Pl.'s Mot. to
Amend (Dist Ct. Dkt. #8) at 6 n.5.  Therefore, *arguendo*, according to SGU Ltd.'s

---

[12] Other procedural avenues were also available.  For example, the School
could have moved to dismiss on the basis of nonjoinder of a necessary party, *see*
C.P.L.R. § 1003, or SGU Ltd. could have moved to intervene, *see id.* § 1013.

[13] The *Caines* court denied a similar motion but noted, "[h]ad service been
made upon either the president or treasurer, a different result would follow."
8 Misc. 2d at 790.  Here, Dr. La Russo served the summons with notice at the
office of the School's Secretary of the Board and its Chief Financial Officer
(A.129, 135-38); *see infra* n.19.  Because those are the School's equivalents to
"president" and "treasurer," this is sufficient compliance with the General
Associations Law.  *See In re Pasch* (*Chemoleum Corp.*), 26 Misc. 2d 918, 920
(N.Y. Sup. Ct. 1960) ("'Chairman', who exercises all the functions usually
exercised by a president and who in fact is the chief executive officer of the
association . . . is equivalent to the term 'president' . . . .").

own reasoning, SGU LLC would be the defendant here, and there would be no diversity of citizenship.

Second, SGU Ltd. opposed Dr. La Russo's motion to amend to add as defendants SGU LLC (and other SGU-related entities) on the grounds that "Plaintiff [cannot] impose vicarious liability on SGU LLC . . . by virtue of any alleged ownership of . . . SGU Ltd." *Id.* at 15. It went on to argue that "New York law presumes that a corporate entity is legally independent of its owner," and "[t]he fact that SGU LLC is alleged to own SGU Ltd. is simply not enough." *Id.* 15-16 n.11 (citation omitted) (citing *Bartle v. Home Owners Coop., Inc.*, 309 N.Y. 103, 106 (1955)). It is perplexing then that SGU Ltd. asserts that it is really the defendant merely because it owns the School of Medicine. SGU Ltd. argued that SGU LLC was not a proper defendant because Dr. La Russo's complaint failed to specify what wrongful acts it had committed. *Id.* at 4 n.3. But this same argument supports the conclusion that the School of Medicine—not SGU Ltd.—is the only proper defendant. *See id.* at 11 ("Although Plaintiff asserts claims against the collective 'St. George's,' . . . the allegations are that the only relevant actors here are the Medical School and its employees.").

In sum, SGU Ltd. is not a party, there is no merit to its assertion that the School of Medicine is a "non-juridical entity," and the district court erred in

23

allowing SGU Ltd. to *sua sponte* substitute itself as the defendant based only on its

conclusory statement that the School was "non-juridical."

### B.    As a non-party, non-defendant, SGU Ltd. had no authority to invoke removal jurisdiction under 28 U.S.C. § 1441.

Removal jurisdiction in the federal courts is provided by 28 U.S.C. § 1441:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed *by the defendant or the defendants*, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a) (emphasis added).  Who may invoke removal jurisdiction is a

question of statutory construction.  *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S.

100, 104 (1941) (holding that a plaintiff against whom the defendant filed a

counterclaim was not a "defendant" under the precursor to § 1441).  It is black

letter law that the removal statute must be strictly construed:

> Not only does the language of the [Congressional act codifying the modern removal statute] evidence the Congressional purpose to restrict the jurisdiction of the federal courts on removal, but the policy of the successive acts of Congress regulating the jurisdiction of federal courts is one calling for the strict construction of such legislation.  The power reserved to the states under the Constitution to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the Judiciary Articles of the Constitution.  "Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined."

*Id.* at 108-09 (quoting *Healy v. Ratta*, 292 U.S. 263, 270 (1934)).

24

The Supreme Court has consistently reaffirmed this rule of strict construction of the removal statute. *See, e.g.*, *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002) ("These statutory procedures for removal are to be strictly construed.") (citing *Shamrock*, 313 U.S. at 109); *Holmes Group, Inc. v. Vornado Air Circulation Sys.*, 535 U.S. 826, 832 (2002) (same).

This Court has carefully followed these rules and refused to expand the federal removal statute beyond its plain meaning:

> "The right to remove a state court action to federal court on diversity grounds is statutory, and must therefore be invoked in strict conformity with statutory requirements. In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, *resolving any doubts against removability*."

*Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994) (emphasis added) (citations omitted) (quoting *Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1045-46 (2d Cir. 1991)) (citing *Shamrock*, 313 U.S. at 108; 1A J. Moore & B. Ringle, *Moore's Federal Practice* ¶ 0.157, at 38 (2d ed. 1989)).

Section 1441 allows removal jurisdiction to be invoked only "by the defendant or the defendants." 28 U.S.C. § 1441(a).[14] Thus, the plain language of the statute does not allow a non-defendant or a non-party to remove.

---

[14] The procedures for removal likewise provide that "[a] *defendant or defendants* desiring to remove any civil action from a State court shall file . . . a notice of removal." 28 U.S.C. § 1446(a) (emphasis added).

25

Unsurprisingly, the unanimous view of courts that have actually decided this issue is that a non-defendant or a non-party may not invoke § 1441 removal jurisdiction. *See Hous. Auth. v. Millwood*, 472 F.2d 268, 270-72 (5th Cir. 1973) (vacating district court's decision on "the substantive issues" because "service on HUD was not effected under applicable [state] statutes," and thus, "was not made a party to the suit, a precondition for the district court to have removal jurisdiction"); *Gross v. Deberardinis*, 722 F. Supp. 2d 532, 534 (D. Del. 2010) ("[B]y its plain language [§ 1441(a)] limits the right of removal to the 'defendant' or 'defendants.' . . . Even assuming Local 1545 Pension Plan is the real-party-in-interest, the Court concludes that it is not a 'defendant' within the meaning of § 1441(a), and therefore, is not entitled to remove this action."); *Whitney Lane Holdings, LLC v. Don Realty, LLC*, No. 08-cv-775, 2010 WL 1257879, 2010 U.S. Dist. LEXIS 29778, at *5 (N.D.N.Y Mar. 26, 2010) ("Where a removal statute speaks only of removal by a 'party' or a 'defendant,' a non-party who claims to be a real party in interest has no authority to remove a case from state court."); *Juliano v. Citigroup, N.A.*, 626 F. Supp. 2d 317, 319 (E.D.N.Y. 2009) (Mauskopf, J.) ("The weight of authority instructs that a district court is without subject matter jurisdiction in a case where that court's removal jurisdiction is invoked by a non-party.") (citing further cases); *Sheppard v. Sheppard* (*In re Notice of Removal Filed by Einhorn*), 481 F. Supp. 2d 345, 347-48 (D.N.J. 2007) ("The plain language of [§1441] clearly limits the right of removal

to 'defendants.' In this case, the Fund is not even a party to the state action. To interpret 'defendant' to include non-parties would produce an absurd result and would contravene more than 65 years of jurisprudence that has only allowed removal by 'defendants' to claims asserted by a plaintiff."); *Newman & Cahn, LLP v. Sharp*, 388 F. Supp. 2d 115, 117 (E.D.N.Y. 2005) (Spatt, J.) ("A non-party has no authority to seek removal under the removal statutes. *See* 28 U.S.C. § 1441, 1446(a). Similarly, an individual that claims to be a real party in interest has no authority to seek removal. The statutes that provide authority to remove actions to federal court only allow for removal 'by the defendant or defendants.'"); *Am. Home Assurance Co. v. RJR Nabisco Holdings Corp.*, 70 F. Supp. 2d 296, 298-99 (S.D.N.Y. 1999) (Rakoff, J.) ("[A] non-party—even one that, like Nabisco, claims to be a real party in interest—has no authority to notice removal under the statutes here utilized, 28 U.S.C. § 1441 and § 1446(a), which speak only of removal 'by the defendant or defendants.") (citing further cases); *see also Jana Master Fund, Ltd. v. JP Morgan Chase & Co.*, 490 F. Supp. 2d 325, 330 (S.D.N.Y. 2007) (Castel, J.) (non-party corporate parent of defendant cannot invoke removal provision of the Edge Act, 12 U.S.C. § 632, because "[t]he removal provision is explicit that only a 'defendant' is authorized to remove").

The leading federal civil procedure treatises also recognize that "under the general removal statute, only defendants are permitted to remove a civil action

from a state court."    16 James Wm. Moore & Georgene M. Vairo, *Moore's Federal Practice – Civil* § 107.11 (3d ed.); *see also* 14C Charles A. Wright, Arthur R. Miller, Edward H. Cooper & Joan E. Steinman, *Federal Practice and Procedure* § 3721 (4th ed.) ("Federal jurisdiction can be invoked upon removal only by a defendant."); *id.* § 3730 ("Section 1446(a) of Title 28 authorizes only the state court defendants to remove cases to federal court.").  Thus, "a non-party, even one that claims to be a real party in interest, may not remove or participate in the removal of a case."  Moore & Vairo, *supra*, § 107.11; *see also* Wright, Miller, Cooper & Steinman, *supra*, § 3730 ("The federal courts have strictly interpreted these limitations, often speaking of the right to remove as being limited to 'true' defendants. . . .  Intervenors may file notices of removal . . . but the intervention must precede the removal.").

While it appears that this Court has not had occasion to address this basic principal of removal jurisdiction in a reported decision—we assume because the statute is clear and removal by a non-party always results in a remand order, which "is not reviewable on appeal," 28 U.S.C. § 1447(d)—the summary decision in *JRA Holding v. McCleary*, 100 F.3d 944 (table case), 1996 U.S. App. LEXIS 2910 (2d Cir. 1996), states that a non-party cannot invoke removal jurisdiction:

> Judge Dearie remanded the case to the state court because removal was improvident and without jurisdiction – Hidalgo was not a party to the action she sought to remove.  *See* 28 U.S.C. §§ 1441(a), 1446(a) (only a defendant may remove an action); *Franklin Nat'l Bank Sec.*

28

>*Litig. v. Andersen*, 532 F.2d 842, 846 (2d Cir. 1976) (same); *see*
>*generally* 14A Charles Alan Wright, et al., *Federal Practice and*
>*Procedure*, Jurisdiction and Related Matters § 3731 (1985).

*JRA Holding*, 1996 U.S. App. LEXIS 2910, at *3. This Court has also recognized

that "removal . . . not authorized by law, result[s] in a failure of subject matter

jurisdiction." *Mignogna*, 937 F.2d at 41.

Thus, it is clear that SGU Ltd., a non-party, had no authority to remove this

case, and the district court erred in assuming removal jurisdiction over this case.

The lower court ignored the plain language of the statute and brushed aside

precedent with a meritless distinction. Citing *JRA Holding*, *Whitney Lane*

*Holdings*, and *American Home Assurance Co.*, the court stated: "[t]hese cases are

distinguishable . . . in that they involve removal by non-parties to an action in

which there was no dispute as to the legal existence of the named defendant"

(A.293). The court concluded that SGU Ltd.'s removal was proper because "it

removed the case as the owner and operator of [the School of Medicine], which it

claims is a 'non-juridical' entity" (A.294). Aside from the fact that the School *is* a

juridical entity, *see supra* Point I.A, it makes no difference under § 1441 whether

the named defendant is juridical or owned by another company. The plain

language of the statute allows removal only by "a defendant or defendants." To

the extent that there is any question about the School of Medicine as a proper party

defendant, SGU Ltd. provides no authority that it can *sua sponte* substitute itself as

29

defendant and remove, and the district court erred by failing to "resolv[e] any doubts *against removability*." *Lupo*, 28 F.3d at 274 (emphasis added).

In support of its conclusion that removal was proper, the district court cited four unpublished district court decisions from other circuits (A.294-95). However, none of those cases squarely addressed whether a non-party, which has not been served and has not answered in state court, can remove under § 1441—and one of those decisions expressly recognized that a non-party lacks authority to remove.[15]

In *Ware v. Wyndham*, No.09-6420, 2010 WL 2545168, 2010 U.S. Dist. LEXIS 60734 (D.N.J. June 18, 2010), the plaintiff sued "Wyndham Worldwide Incorporated" in state court—but it was clear from her complaint that she intended to sue her former employer, Wyndham Vacation Resorts, Inc. ("Wyndham Vacation"). *Id.* at *1-2. Wyndham Vacation accepted service and answered the complaint, and then sent the plaintiff a stipulation to substitute itself as the defendant. *Id.* at *2. The plaintiff executed the stipulation, which Wyndham Vacation filed in state court. Wyndham Vacation, now the defendant, removed to federal court; however, the district court held that removal was untimely however because it was filed more than thirty days after Wyndham Vacation was formally served and knew that it was the intended defendant. *Id.* at *15-16.

---

[15] Even if, *arguendo*, any of those cases could be read to support the district court's conclusion, this Court should not endorse such aberrant opinions that are contrary to the plain language of § 1441 and the overwhelming body of case law.

The district court here cited *Ware* by way of explaining that "[t]hese decisions do not hold that proper service is *required* in order for an intended defendant to remove a case" (A.294-95 n.2).  This is critical because SGU Ltd. insists that it was not formally served (A.8).  Yet, the *Ware* court expressly recognized that "[u]ntil formally served and brought under a court's authority, an entity is not a defendant, but is simply a non-party that lacks standing to remove." 2010 U.S. Dist. LEXIS 60734, at *7 (citing *Sheppard*, 481 F. Supp. 2d at 347-48); *see also id.* at *9-10 (citing *Am. Home Assurance*, 70 F. Supp. 2d at 298-99). Thus, *Ware* supports Dr. La Russo's argument that SGU Ltd. "is not a defendant, but is simply a non-party that lacks standing to remove."  *Id.* at *7.  Indeed, in *all* of the decisions cited by the district court, the removing party was formally served and/or answered the complaint in state court, thereby waiving service of process.

In *Hillberry v. Wal-Mart Stores East, L.P.*, No. 05CV-63-H, 2005 U.S. Dist. LEXIS 15942, 2005 WL 1862087 (W.D. Ky. Aug. 3, 2005), the plaintiff sued "Wal-Mart," a non-existent entity.  *Id.* at *2; (*see* A.214-17 (documents filed in the district court in the *Hillberry* case)).   Wal-Mart Stores East, L.P., appeared in the action by serving the plaintiff with an Answer and interrogatories, which were filed with the state court (A.221-37); it also served the plaintiff with an Agreed Order to substitute itself as the proper defendant, which the plaintiff signed and returned (A.255, 284).  The plaintiff sent a letter to counsel for Wal-Mart Stores East, L.P.

31

acknowledging his mistake in naming the defendant (A.286).  Thus, the *Hillberry*
court accepted removal by Wal-Mart Stores East, L.P., as "the real party in interest
defendant."   2005 U.S. Dist. LEXIS 15942, at *6.  It did so, however, without
addressing the basis for removal or mentioning § 1441.

Similarly, in *Pioneer Exploration, Ltd. v. Kansas Gas Serv. Co.*, No. 04-
1335-WEB, 2004 WL 2931403, 2004 U.S. Dist. LEXIS 25458 (D. Kan. Dec. 17,
2004), the plaintiff named "Kansas Gas Service Company, a division of Oneok" as
the defendant in state court.  *Id.* at *1.  The plaintiff served ONEOK, Inc.'s
registered agent, identifying the defendant's principal place of business as
ONEOK, Inc.'s address, and alleging that judgment was sought against the
successor of Kansas Power and Light.  *Id.* at *3-4, 8.  ONEOK, Inc. removed and
submitted uncontroverted affidavits that the successor of Kansas Power and Light
was ONEOK, Inc. d/b/a Kansas Gas Service.  *Id.*  The plaintiff had no claims
against the distinct entity "Kansas Gas Service Company."  *Id.* at *11.  Here, SGU
Ltd. has insisted that it was not served with process (A.8), and conceded "that the
only relevant actors here are the Medical School and its employees," *see supra*
Point I.A.  Thus, this case shares none of the distinguishing facts of *Pioneer*.

Finally, *Lee v. Food Lion, LLC*, No.4:12cv142, 2013 WL 588767, 2013 U.S.
Dist. LEXIS 19508 (E.D. Wa. Feb. 13, 2013), stands in a similar posture as *Ware*:
The plaintiff named "Food Lion Stores, Inc." but served the intended defendant,

32

"Food Lion, LLC," which filed an answer in the state court.  *Id.* at *2.  After the plaintiff filed his amended complaint naming "Food Lion, LLC" as the defendant, Food Lion, LLC removed.  *Id.* at *3-4.  The plaintiff contested removal only on the grounds that it was untimely, and the district court agreed.  *Id.* at *12.  Because there was no question that Food Lion, LLC, was the intended defendant, the court did not address whether an unintended, non-party, non-defendant, can invoke the removal jurisdiction provided by 28 U.S.C. § 1441.

SGU Ltd. undertook *none* of the efforts that the defendants in these cases took to first appear in the state court proceeding.  Indeed, SGU Ltd. purposefully avoided appearing in the state court proceeding and cloaked its identity when its attorneys filed a Demand for Complaint there.[16]   This renders these cases inapposite and dooms SGU Ltd.'s standing to invoke federal removal jurisdiction.

## C.    There is no diversity of citizenship between the Plaintiff and the sole Defendant.

There is no diversity of citizenship because according to SGU Ltd.'s admission that the sole defendant, the School of Medicine, is an unincorporated association, it is a citizen of New York.   An unincorporated association is

---

[16] SGU Ltd. has engaged in gamesmanship in this litigation that should not be condoned.  When SGU Ltd.'s lawyers filed a Demand for Complaint in the state court proceeding, they did not mention SGU Ltd. and instead, noted their appearance for "Defendant, sued herein as St. George's University School of Medicine" (A.139-40).  SGU Ltd.'s Notice of Removal filed in the district court by the same attorneys was the first time SGU Ltd. noted its appearance in this case.

considered a citizen of the states in which its members are citizens.  *See Sperry Prods.*, 132 F.2d at 411-12; *see also Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990) ("We adhere to our oft-repeated rule that diversity jurisdiction in a suit by or against [an artificial entity] depends on the citizenship of . . . 'each of its members.'").  The School of Medicine has members who are citizens of New York.[17]  Accordingly, the School is a citizen of New York; and because Plaintiff is also a citizen of New York, there is no diversity jurisdiction.

Therefore, this Court should reverse and remand with directions to the district court to remand this case.  *See Mignogna*, 937 F.2d at 40 ("[I]f the federal court never could have exercised original jurisdiction over the case, remand is required even after the entry of final judgment.") (quoting *Am. Fire & Casualty Co. v. Finn*, 341 U.S. 6, 18 (1951): "To permit a federal trial court to enter a judgment in a case removed without right from a state court where the federal court could not have original jurisdiction of the suit even in the posture it had at the

---

[17]  See A.104, 108, identifying "St. George's University, School of Medicine" as "33.3%" "owned" by "Patrick Adams[,] 49 Fifth Avenue[,] Bay Shore, NY 11706"; and identifying "Adams, Charles J JD," as a "Member of the Board" and "General Counsel/Secretary of the Board."  Charles J. Adams is a licensed attorney in New York, whose address, "3500 Sunrise Hwy Bldg 300, Great River, NY 11739," is the same as the address listed on the School's website (A.19, 21); SGU – Contact Us, http://www.sgu.edu/contact-sgu.html (last visited June 6, 2013).

34

time of judgment, would by the act of the parties work a wrongful extension of federal jurisdiction and give district courts power the Congress has denied them.").

## II.    Plaintiff's Claims Are Not Time Barred

The district court erred in holding that Dr. La Russo's claims are time barred.  First, the court concluded that the complaint was filed one day after the expiration of the 2½-year statute of limitations for medical malpractice claims, *see* C.P.L.R. § 214-a, because it incorrectly rejected application of the state tolling provision for any period of Matthew's incapacity (A.296-303).  Second, the court misapplied New York law in deciding that Dr. La Russo's breach of contract and non-medical negligence claims (which have 6- and 3-year limitations periods respectively) were duplicative of her malpractice claim (A.303-09).  This Court reviews *de novo* a dismissal for failure to file a claim within the statute of limitations.  *Papelino v. Albany Coll. of Pharmacy*, 633 F.3d 81, 88 (2d Cir. 2011).

### A.    The district court misapplied New York's tolling statute, C.P.L.R. § 208.

New York Civil Practice Law and Rules § 208 provides in relevant part that for claims with a limitations period less than three-years, "[i]f a person entitled to commence an action is under a disability because of . . . insanity at the time the cause of action accrues, . . . the time shall be extended by the period of disability." The district court misapplied this provision in two ways: first, by concluding that for § 208 to apply at all, Matthew had to be continuously disabled for the entire

35

2½-year limitations period; and second, the complaint did not allege that Matthew met the standard for "insanity," defined as "an over-all inability to function in society," for the entire 2½-year period after the claim accrued.

### i.    Section 208 tolls the commencement of the limitations period until the initial period of disability ends.

The district court incorrectly concluded that "[t]o satisfy the standard for insanity under CPLR § 208, Plaintiff would . . . have to allege that [Matthew] *continuously* experienced an 'over-all inability to function in society' during the period between May 14, 2009 and November 14, 2001"—that is, for the 2½-year limitations period after the claim accrued (A.300) (emphasis in original).  This interpretation misconstrues the tolling statute and renders it nearly meaningless.

Section 208 tolls the commencement of the running of the statute of limitations until the disability first ceases. *Jordan v. State*, 56 Misc. 2d 1032, 1035 (Ct. Cl. 1968) ("'where a disability existing at the time of the accrual of the cause of action is removed *the statute will then run* and will not be suspended by any subsequent intervening disability'" (emphasis added) (quoting *Gershinsky v. State*, 6 A.D.2d 964, 966 (3d Dep't 1958), *aff'd*, 6 N.Y.2d 798 (1959)); *see also* David D. Siegel, *New York Practice* § 54, at 76 (4th ed. 2005) ("If the applicable statute of limitations is less than three years, the entire period of disability is a tolling period, i.e., the statute of limitations does not run during it.").  When there is a lapse in disability, the rule is that "if the disability existed at the accrual of the cause of

36

action and is thereafter removed, the statute of limitations will begin to run and will continue to run notwithstanding the subsequent manifestation of the disability."  1 Weinstein, Korn & Miller, *New York Civil Practice: CPLR* ¶ 208.04 (2d ed. 2006) (citing *Jordan*, 56 Misc. 2d 1032); *see also id.* ("CPLR 208 by its terms applies if the claimant is under the disability 'at the time the cause of action accrues.'  A subsequently arising disability will not permit extension.").

The district court cited two decisions for the mistaken proposition that the disability must be continuous throughout the entire limitations period for tolling to apply at all (*see* A.297-98) (citing *De Los Santos v. Fingerson*, No. 97 Civ. 3972 (MBM), 1998 U.S. Dist. LEXIS 16657, 1998 WL 740851 (S.D.N.Y. Oct. 23, 1998), and *Graboi v. Kibel*, 432 F. Supp. 572 (S.D.N.Y. 1977)).  Neither decision, however, supports such a strange proposition.

In *De Los Santos*, the court did not address a lapse in disability and only mentioned "continuous" while reciting the standards of law.  The court held that "the extrinsic evidence submitted by plaintiffs themselves demonstrate[d] conclusively that de los Santos did not suffer a disability sufficient to trigger § 208."  1998 U.S. Dist. LEXIS 16657, at *13.  In reciting the legal standards, the court noted in dicta: "[T]he insanity alleged under § 208 must be found to be continuous."  *Id.* at *10 (citing *Graboi*, 432 F. Supp. at 579).  Thus, *De Los Santos* does not support the district court's decision, and the *Graboi* opinion confirms that.

37

*Graboi* makes clear that a lapse in disability does not foreclose *any* tolling, but merely ends the period of tolling, and commences the running of the statute of limitations. The district court here misunderstood the following passage from *Graboi* as indicating that a lapse in disability eviscerates any tolling:

> [E]ven if a plaintiff is found either to have been insane at the time of or rendered insane by the occurrence, the insanity must also be found to have been continuous. In other words, if the plaintiff had a lucid interval of significant duration, preceded and followed by a period of insanity, the toll is lost and is not resurrected when a plaintiff relapses into insanity.

432 F. Supp. at 578-79 (*quoted at* A.297-98). In fact, *Graboi* correctly explained that once the disability ceased, the period of tolling ends. There, the claim arose in April 1969, and the suit was brought in January 1975; thus, the court said, "if plaintiff's insanity . . . continued without interruption until January, 1972, the [claim with a 3-year statute of limitations] would be viable." *Id.* at 574, 579. Accordingly, the court did not hold that tolling required the plaintiff to be continuously disabled for the entire 3-year period between April 1969 and April 1972; instead, the court expressly recognized that if the disability existed when the cause accrued and persisted uninterrupted until January 1972, *i.e.*, three years before the suit was filed, then the suit would have been timely. The court found, however, that neither was true and thus, "no toll was created." *Id.* at 580.

Here, the district court's understanding of § 208 would render it nearly meaningless. According to the district court's interpretation, if a person is disabled

when her malpractice claim accrues and her disability ceases two years, five months, and thirty days later, then she would have one or perhaps two days to file her claim. The statute should not be read to produce this absurd result. *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("interpretations of a statute which would produce absurd results are to be avoided").

Applying § 208 correctly, Plaintiff's medical malpractice claim was timely filed. The statute of limitations for medical malpractice claims is 2½ years, C.P.L.R. § 214-a; and Plaintiff filed her suit on November 15, 2011. Thus, if Matthew was disabled when the claim accrued (the district court found that it accrued on May 14, 2009) and remained continuously disabled until May 15, 2009 or later, then Plaintiff's malpractice claim was timely filed. As we turn now to discuss, the allegations in the complaint show that Matthew was disabled under § 208 for at least those two days.

### ii.     The facts alleged meet the standard for tolling under § 208.

The New York Court of Appeals has interpreted C.P.L.R. § 208 "to extend the toll for insanity to only those individuals who are unable to protect their legal rights because of an over-all inability to function in society." *McCarthy v. Volkswagen of Am.*, 55 N.Y.2d 543, 548 (1982). "The condition of an individual's mental capabilities is largely a factual question, and the surrounding circumstances relevant to the claimant's ability to safeguard his or her rights must be scrutinized."

39

*Hoops v. Bellevue Hosp. Ctr.*, 28 Misc. 3d 61, 63 (App. Term 1st Dep't 2010) (citations omitted) (citing *Barnes v. Cnty. of Onondaga*, 65 N.Y.2d 664 (1985), and *Bowles v. State*, 208 A.D.2d 440, 442 (1st Dep't 1994)).

The allegations in the complaint are sufficient to show that Matthew was unable to protect his legal rights because of an over-all inability to function in society—certainly during the several days he was held at Mount Gay. When he was brought to Mount Gay, Matthew was unable to consent to any form of treatment due to his condition, and was involuntarily admitted (A.55). When his father found him at Mount Gay on May 14, 2009, Matthew was "in an outdoor cell lying on a concrete floor without a mattress, naked except for boxer shorts that were hanging down"; "incoherent due to overdosing of Haldol and other drugs"; "experiencing muscle weakness, muscle tremors, dilated eyes, drowsiness, and dry mouth and lips due to his overmedication and a lack of adequate hydration"; and his "body was covered with insect bites and a noxious odor of urine and feces permeated his person" (A.55-56). Matthew's parents were unable to secure his release from Mount Gay until May 16, 2009 (A.56).

These facts entitle Plaintiff to tolling. They far exceed the limited disability found insufficient in *McCarthy*, 55 N.Y.2d at 546 (plaintiff entered college, held a job, and filed a third-party complaint while claiming to be "insane"), and compare to disabilities found sufficient in other decisions, *see, e.g.*, *Barnes*, 65 N.Y.2d at

40

666 (plaintiff had "'a major depressive disorder' and 'a very severe depressive reaction' as a result of which 'she did not have an over-all ability to function and . . . did not know what to do'"); *Cairl v. Cnty. of Westchester*, 150 A.D.2d 749 (2d Dep't 1989) (plaintiff "suffered from paranoid schizophrenia and borderline personality disorder with symptoms of hallucinations and impulsive suicidal behavior necessitating frequent and multiple hospitalizations, constant medication and psychotherapy"); *Yannon v. RCA Corp.*, 131 A.D.2d 843, 846 (2d Dep't 1987) ("[plaintiff] was unable to recall his name, could not recognize his wife, and could not provide a medical history," and "was unable . . . to function and take care of his business affairs").

At the very least, these facts demanded a hearing on Matthew's incapacity on May 14 and 15, 2009. *See DePoel v. City of New York*, 772 F. Supp. 106, 107-08 (E.D.N.Y. 1991) (hearing required where plaintiff was involuntarily confined based on doctor's observations that she was "'disorganized, unkempt, grossly delusional, paranoid, unable to take care of herself or house'"); *Santana v. Union Hosp.*, 300 A.D.2d 56, 57-58 (1st Dep't 2002) (hearing required where a doctor concluded that plaintiff was "unable to function independently . . . was found to have 'poor recall' and 'difficulty remembering conversations,'" and "'difficulty expressing her needs secondary to memory loss and global aphasia'"); *Stackrow v. N.Y. Prop. Ins. Underwriter's Ass'n*, 115 A.D.2d 883, 884 (3d Dep't

41

1985) (hearing required based on son's affidavit that, *inter alia*, "my father is able to function in the protective atmosphere of our home, [but] he is totally uncapable *[sic]* of handling his business and financial affairs and dealing with the public without assistance[,] . . . is often bewildered and confused, and is unable to comprehend or respond to what is said to him[,] [and] . . . whenever he is agitated or upset, he typically becomes more incoherent and disoriented"); *Wheeler v. State*, 104 A.D.2d 496, 498 (2d Dep't 1984) (toll may apply for bi-polar disorder); *Hoops*, 28 Misc. 3d at 63 (hearing required where plaintiff was involuntarily committed to psychiatric facility, "had previously been diagnosed with bipolar disorder, [and] was, among other things, unable to care for himself, exhibiting 'poor insight and judgment' and suffering from 'manic psychosis'").

The district court mistakenly concluded that Dr. La Russo's allegations were insufficient because instead of focusing on the two days that mattered, May 14 and 15, 2009, the court believed that Matthew's incapacity had to cover the entire limitations period of May 2009 to November 2011 (*see* A.300 ("[Matthew] was apparently well enough to travel back to Grenada to return to school in the fall of 2010 after undergoing more treatment. Plaintiffs allegations therefore establish that [Matthew] did not *continuously* experience a total 'inability to function in society' during the relevant time period." (citation omitted)). Likewise, the district court refused Plaintiff's corollary request to hold an evidentiary hearing so she

42

could present testimony regarding Matthew's incapacity in the days before and after his involuntary commitment at Mount Gay, because the court found that this testimony would not address Matthew's psychic condition after returning to the United States (A.303 n.9).    Again, this analysis suffers the same mistaken perspective driving the court's error in rejecting any period of tolling.

To the extent that the district court addressed Matthew's condition in the days surrounding his admission to Mount Gay (*see* A.301-02), the court overlooked and misunderstood pertinent facts, and misapplied New York law.  The court failed to mention that Matthew was involuntarily admitted to Mount Gay because he was unable to consent to any form of treatment due to his condition, and that at Mount Gay Matthew was incoherent, overdosed on antipsychotic drugs, and physically incapable of caring for himself (*compare* A.55-56, *with* A.301-02).  These are critical allegations supporting Matthew's disability that the court missed.

The court cited *Eisenbach v. Metro. Transp. Auth.*, 62 N.Y.2d 973 (1984), to suggest, as SGU Ltd. had argued, that "[p]sychological side-effects caused by medication . . . do not amount to insanity that would permit the statute to be tolled."  SGU Ltd.'s Mem. in Supp. of Mot. to Dismiss (Dist. Ct. Dkt. #11) at 15; (*see* A.301-02).  This is wrongly applied for two reasons.  First, Matthew was not suffering from "insanity" under § 208 *because of* "side-effects caused by medication"; instead, as the complaint makes clear, Matthew was "unable to

43

protect his legal rights because of an over-all inability to function in society" at the time he was brought to Mount Gay, and he was overdosed with antipsychotic drugs in response to his condition. Second, *Eisenbach* held that "insanity" under § 208 "should not be read to include the temporary effects of medications administered in the treatment of *physical injuries*." 62 N.Y.2d at 975 (emphasis added). It did not address a psychotic breakdown such as here alleged (*see* A.54), being "treated" by an overdose of antipsychotic drugs. Finally, the district court mistakenly relied on a case involving substantially less disability. *See Dumas v. Agency for Child Dev.-N.Y. City Head Start*, 569 F. Supp. 831, 834 (S.D.N.Y. 1983) (plaintiff held a job for eighteen months).

Thus, the district court should have tolled (or at least granted a hearing on tolling) the running of the statute of limitations for Dr. La Russo's medical malpractice claim for at least May 14 and 15, 2009, when Matthew was involuntarily committed to Mount Gay and unable to protect his legal rights because of an over-all inability to function in society.

### B.    Plaintiff's breach-of-contract and negligence claims are distinct from and not duplicative of her medical malpractice claim.

The district court also erred in concluding that Dr. La Russo's principal claim for breach of contract and her non-medical negligence claim were duplicative of her secondary medical malpractice claim (A.303-09). This is a critical flaw in the court's decision because Dr. La Russo's breach of contract and

44

personal injury claims are governed by longer statutes of limitations of 6 years and 3 years, respectively. *See* C.P.L.R. §§ 213(2), 214(5). Accordingly, SGU Ltd. has not argued that those claims were untimely filed (*see* A.296-97 n.5).

The district court noted that "[i]n applying the statute of limitations, courts 'look to the reality or the essence of the action and not its form'" (A.304) (quoting *Pacio v. Franklin Hosp.*, 63 A.D.3d 1130, 1132 (2d Dep't 2009)). "The critical factor is the nature of the duty owed to the plaintiff that the defendant is alleged to have breached." *Caso v. St. Francis Hosp.*, 34 A.D.3d 714, 714 (2d Dep't 2006). Thus, a breach of contract claim may be dismissed if "it is merely a redundant pleading of plaintiff's malpractice claim in another guise." *Monroe v. Long Island Coll. Hosp.*, 84 A.D.2d 576 (2d Dep't 1981).

Dr. La Russo's complaint sounds principally in contract. Indeed, it begins by stating, "[t]his is an action for damages to redress defendants' *breach of contract*, medical malpractice, and negligence" (A.47 (emphasis added)). Moreover, it contains a section entitled "**The Contract**," which describes the facts about the School's representations to Matthew that formed part of their agreement when he accepted the School's offer to enroll (A.59-61). Among these representations were the express promise to provide adequate on-campus medical services, including mental health services, and to utilize two specific health facilities in Grenada for medical emergencies (A.59-60). The complaint also

45

alleges that the School breached both of these contractual obligations, first by not providing Matthew with the promised on-campus mental health services that he needed (both when he saw Dr. Stanley initially, and later when he had entered a full-blown psychological crisis); and second, by taking him to Mount Gay when he required emergency care instead of one of the two medical facilities identified in its written promotional materials (A.63). These allegations support a claim premised entirely on the breach of an express promise, and do not implicate the duty of care owed by a doctor to a patient. This claim is not a redundant pleading of Plaintiff's malpractice claim, which relates to the School medical personnel's failure to adequately treat Matthew and/or failure to diagnose his medical needs.

The district court mistakenly dismissed Dr. La Russo's contract claim by recasting it as a claim "'arising out of the rendition of medical services by a physician,'" and then concluding that "Plaintiff fails to allege a 'special promise' by Defendant 'to effect a cure or to accomplish some definite result'" (A.305-06) (quoting *Monroe*, 84 A.D.2d at 576). This improperly mischaracterizes Plaintiff's claim and sets up a straw man argument based on inapposite case law. Plaintiff's claim against the School is based on the breach of its express promise to provide health services on-campus, and to utilize two specific medical facilities for emergencies. Neither claim depends on the rendition of medical treatment.

46

For negligence claims, "a claim sounds in medical malpractice when challenged conduct 'constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician.'" *Weiner v. Lenox Hill Hosp.*, 88 N.Y.2d 784, 788 (1996) (quoting *Bleiler v. Bodnar*, 65 N.Y.2d 65, 72 (1985)). Thus, for example, "a claim for breach of duty to use due care in the selection of doctors and nurses, and to furnish competent medical personnel," is negligence, as is a claim based on "a hospital's failure to adopt and prescribe proper procedures and regulations." *Bleiler*, 65 N.Y.2d at 73. "In both instances, the gravamen of the complaint is not negligence in furnishing medical treatment to a patient, but the hospital's failure in fulfilling a different duty." *Id.*

Dr. La Russo's non-medical negligence claim relates to the conduct of School personnel in taking Matthew off-campus and delivering him to Mount Gay when he was in need of emergency care. The complaint alleges that the School's "security officers picked [Matthew] up in the middle of the night and escorted him" off campus (A.54; *see also* A.64 ("Defendants and employees and/or agents of [the School of Medicine] . . . negligently failed to use due care in the performance of their duties when, *inter alia*, . . . school security officials physically took custody of [Matthew] and removed him from St. George's Campus, resulting in his transfer to Mount Gay Hospital")).

47

The district court misunderstood this aspect of Plaintiff's claim as arising from the rendition of medical care (A.307-08). There is nothing about this conduct that "constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician," and the duty at issue does not arise from the doctor-patient relationship. *Bleiler*, 65 N.Y.2d at 72; *see also Weiner*, 88 N.Y.2d at 788. Instead, this is a classic example of the "duty of voluntary assumption." 14 Lee S. Kreindler et al., *New York Law of Torts* § 6.13, at 270 (1997) (citing *H.R. Moch Co. v. Rensselaer Water Co.*, 247 N.Y. 160 (1928) (Cardozo, J.)); *see also Parvi v. City of Kingston*, 41 N.Y.2d 553, 559 (1977) ("even when no original duty is owed to the plaintiff to undertake affirmative action, once it is voluntarily undertaken, it must be performed with due care"). Once School security personnel seized Matthew, they had a duty to use due care for Matthew's safety, which they breached by delivering him to Mount Gay. Thus, Plaintiff's negligence claim does not depend, as the district court mistakenly concluded, on the doctrine of *in loco parentis* (A.308-09).

There is also nothing about this claim that requires specialized expertise to explain. "For the act to be medical malpractice, the subject matter of the act must be outside the common knowledge and experience of ordinary jurors, and the inferences to be drawn are of such a nature as to require special knowledge or skill." 1 Weinstein, Korn & Miller, *supra*, ¶ 214-a.02 & n.16 (citing cases). Any

48

jury can understand that delivering Matthew to a facility known to have deplorable conditions like Mount Gay was a breach of the duty to use ordinary care.

The district court mistook Plaintiff's claim against the School as a claim against a medical provider for treatment. Accordingly, all of the cases that the court cited (and that SGU Ltd. cited) were cases involving suits against medical providers based on their failure to provide treatment or negligently providing treatment. Here, Dr. La Russo's claims are against the School of Medicine for its breach of contract, non-medical negligence, and medical malpractice.[18]

## III. The District Court Abused its Discretion in Stating It Would Dismiss for *Forum Non Conveniens*

The district court erred in stating in dicta that "[a]ssuming *arguendo* that Plaintiff adequately stated a claim for negligence and/or breach of contract, and if the Court granted Plaintiff's request to join additional parties as defendants, dismissal would still be warranted under the doctrine of *forum non conveniens*" (A.309 n.13). This court reviews this decision "deferentially for abuse of discretion." *Norex Petroleum Ltd. v. Access Indus.*, 416 F.3d 146, 153 (2d Cir. 2005). "A district court abuses its discretion in granting a *forum non conveniens* dismissal when its decision (1) rests either on an error of law or on a clearly

---

[18] The claim for "psychiatric malpractice" largely depends on whether it is determined during discovery that School medical personnel were involved and acted wrongly on the day Matthew was seized, before being sent to Mount Gay.

erroneous finding of fact, or (2) cannot be located within the range of permissible decisions, or (3) fails to consider all the relevant factors or unreasonably balances those factors." *Id.* (internal quotation marks omitted). The district court abused its discretion in all three ways.

First, the district court's analysis rests on erroneous findings of fact and errors of law. The court found that "all the relevant events giving rise to Plaintiff's claims occurred in Grenada" (A.309-10 n.13). However, this erroneous finding overlooks the events central to Dr. La Russo's breach of contract claim, which occurred in New York (*see* A.59-60). The court also concluded that "the place in which the contract was entered is . . . irrelevant for purposes of the Court's *forum non conveniens* analysis" because "the Court finds that Plaintiff has failed to state a cause of action for breach of contract" (A.310 n.13). But that statement is legally incorrect, *see supra* Point II.B, and is irreconcilable with the premise of the court's *forum non conveniens* analysis, *viz.*, that it was "[a]ssuming *arguendo* that Plaintiff adequately stated a claim for . . . breach of contract," (A.309 n.13).

The court also committed "errors of law in determining the deference due plaintiff's choice of forum and in the analysis of an adequate alternative forum." *Norex*, 416 F.3d at 153. The district court stated that Dr. La Russo's "choice of venue is entitled to considerable deference" (A.309 n.13), but the correct statement of law is that "the greatest deference is afforded a plaintiff's choice of its home

forum." *Norex*, 416 F.3d at 154; *see also Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001) (en banc).  The district court also failed to apply any real deference to Dr. La Russo's choice of her home forum, and thus, the court's *forum non conveniens* analysis cannot stand. *Norex*, 416 F.3d at 157.

Moreover, "[t]o secure dismissal of an action on grounds of *forum non conveniens*, a movant must demonstrate the availability of an adequate alternative forum." *Id.* (citations omitted).  SGU Ltd.'s motion failed at the first prong of the test for an adequate alternative forum, which requires a showing that the defendant is "amenable to service of process" in the alternative forum.  *Id.* (quotation marks omitted).   The Defendant School of Medicine has never appeared in this litigation—and SGU Ltd. persists in claiming that it is non-juridical—therefore, it does not appear that it would be amenable to service in Grenada.  SGU Ltd., which is not a defendant, has not represented that it would submit to the jurisdiction of Grenada.  The only supporting affidavits it submitted on its motion said nothing about whether it would be amenable to service there (*see* A.122-26); and its memorandum of law, which noted the requirement that a defendant be amenable to service of process in the alternative forum, conspicuously failed to state that SGU Ltd. was so amenable, SGU Ltd. Memo. in Supp. of Mot. to Dismiss (Dist. Ct. Dkt. #11) at 18-19.  Thus, it would be an abuse of the district court's discretion to dismiss for *forum non conveniens*.  *See Norex*, 416 F.3d at 160.

Second, the district court's decision "cannot be located within the range of permissible decisions." *Norex*, 416 F.3d at 153. Plaintiff is aware of no decision granting *forum non conveniens* dismissal where a U.S. citizen brought suit in her home state against a defendant that maintained offices and conducted business in that state. SGU Ltd. cited no such case below.

Third, the district court unreasonably balanced the relevant factors. The court gave practically no weight to the fact that in addition to Matthew, there are "five other witnesses to the facts and circumstances surrounding his psychological crisis in Grenada and his being sent to Mount Gay, plus a treating psychiatrist and an expert witness psychiatrist, who are all located in the United States" (A.162). Dr. La Russo specifically identified each of these fact witnesses and noted that among other things, they would all testify "concerning Matthew's totally incapacitated and disoriented state" (A.162-63). The court also overlooked that the School of Medicine maintains offices and conducts business in New York, and gave no weight to New York's interest in ensuring that its citizens are compensated for the breach of contracts formed within New York. Thus, the court failed to reasonably balance the relevant private and public factors.

## IV. The District Court Abused its Discretion in Denying Plaintiff Leave to Amend Her Complaint

"[T]he denial of leave to amend a complaint" is reviewed "for abuse of discretion." *Chavis v. Chappius*, 618 F.3d 162, 167 (2d Cir. 2010). "A district

52

court abuses . . . the discretion accorded to it when . . . its decision rests on an error of law . . . ." *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001) (internal quotation marks omitted).  Because the district court denied Plaintiff's motion to amend as moot based on its decision to grant SGU Ltd.'s motion to dismiss (A.295 n.4), and that decision was legally erroneous, *see supra* Points II & III, the district court abused its discretion in denying Plaintiff's motion to amend.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed, its March 28, 2013 Opinion and Order vacated, and the case remanded to the district court with instructions to remand to the New York Supreme Court, Westchester County.  If, *arguendo*, the Court decides that removal jurisdiction was properly invoked and diversity jurisdiction exists, the district court's opinion and judgment should be reversed to the extent Plaintiff's complaint was dismissed as untimely and her motion to amend was denied as moot.

Dated:  New York, NY
        June 17, 2013

                                      Respectfully submitted,
                                      BELDOCK LEVINE & HOFFMAN LLP

                                      /s/ Myron Beldock

                                      _____

                                      Myron Beldock
                                      Joshua S. Moskovitz

                                      *Attorneys for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE
## PURSUANT TO FED. R. APP. P. 32(a)(7)(C)(i)

1.      This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because this brief contains **13,676** words, excluding the parts of

the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).


2.      This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because

this brief has been prepared in a **proportionally spaced typeface** using

**Microsoft Office Word 2007** in **Times New Roman 14-point font**.


Dated:  New York, NY
        June 17, 2013

                                    BELDOCK LEVINE & HOFFMAN LLP


                                    /s/ Joshua S. Moskovitz
                                    _____

                                    Joshua S. Moskovitz

                                    *Attorneys for Plaintiff-Appellant*